Opinion of the Court.
TO obtain from Welch a surrender of his elder title, the devisees of Rice exhibited their bill in the court below, claiming the superior equity under an adverse entry, made in the name of their testator, in the following words :
‘‘ Dec. 2, 1782—Thomas Rice enters one thousand acres of land, upon a treasury warrant, No. &c. beginning 80 poles north from where the trace that leads from Lexington to the mouth of Hickman creek, crosses the largest branch of Jessamine ; thence running from said beginning N. 45 W. 400 poles ; thence running from the extremities of this line N. 45 E. until a line parallel to the beginning line, shall include the quantity.”
“ January 21, 1783—Thomas Rice offers the following amendment to his entry of one thousand acres, on a treasury warrant, &c. Instead of the words, “ the largest branch of Jessamine,” insert the words, “ a large branch of Jessamine, where John Craig’s family encamped.”
So that the entry under which the devisees of Rice assert their equity, as amended, is to begin “ 80 poles north from where the trace that leads from Lexington to the mouth of Hickman creek, crosses a large branch of Jessamine, where John Craig’s family encamped.”
The validity of Rice’s entry is not only contested by the answer of Welch, but he also denies that it has been regularly and legally surveyed. The court below dismissed the complainants’ hill, and they have appealed to this court.
1. This court concurs with the court below, in the decree which it pronounced, Lexington, the mouth of Hickman creek, and the trace leading from the one to the other, are all objects proved to have possessed *75 great notoriety at the date of Rice’s entry; and if the trace had crossed but one branch of Jessamine, there would be no difficulty in ascertaining the true position of the entry. But it appears, as well from the surveyor’s report as from the evidence in the cause, that the trace crosses two branches of Jessamine; and there is nothing in the cause calculated to show that a subsequent locator could have ascertained, by the exercise of any thing like reasonable diligence, which of the branches was intended by the maker of the entry. He would infer, from the calls of the original entry, that the largest branch was intended ; and he would perceive, from the amendment, that instead of the largest, a large branch was called for; but he would not, from the amendment, necessarily infer that the maker of the entry intended the smallest branch. It would be more natural to suppose, that the maker of the entry doubted the correctness of the description which he had given of the branch in the original entry, and by changing the expression, largest, to that of large, intended to substitute language which would, with propriety, apply to the branch intended, without knowing whether it was the largest or not; and, for the purpose of more precise description, superadded the further expression, “ where John Craig’s family encamped.” But, without knowing where John Craig’s family encamped, the subsequent locator could not know which branch was intended ; for both branches may, with propriety, be called large branches, and either complies as well with the call, large, as the other. John Craig’s family is proved to have camped at the upper branch delineated on the plat; and if the camp had been notorious at the date of the amendment, that circumstance would have sustained the validity of the entry. But the evidence is totally insufficient to establish the notoriety of the place where Craig’s family camped ; and in the absence of proof of its notoriety, it is impossible that a subsequent locator could have ascertained and known the branch intended by the maker of Rice’s entry ; for there appears to have been camps on each branch, and there was nothing at either, calculated to show that it was the camp at which the family of Craig camped, and not that of any other.
The validity of an entry for land discussed, but not decided.
It is, however, apparent, from the fact of Craig’s family having camped at the upper branch, that the *76 maker of Rice’s entry intended it should begin eighty poles north of that branch ; and although the place of encampment is not proved to have been generally known by the name of Craig’s encampment, yet, as the crossing of each branch of Jessamine by the trace could be easily ascertained, the entry ought not to be entirely destroyed, if, by constructing surveys at each crossing, in conformity to the calls of the entry, there would be any part common to all the surveys.
A surveyor’s report of the complainant’s claim, as laid down according to his directions, without a copy of his patent, or original survey, is no evidence of his boundary, and, consequently, is no evidence of the interference of his claim, with that of the defendant.
2. But were it even conceded, that the entry might he sustained, (and whether it can or not, we would not be understood as expressing any opinion,) still, without showing what land is included in the survey made under Rice’s entry, the complainants cannot he entitled to a decree against the appellee ; and we have been unable to discover any evidence conducing to show that the land in contest, or any part thereof, is contained in Rice’s survey. The beginning of the survey is proved ; but there is no legitimate evidence of any other corner, or any line of the survey. Neither the plat and certificate of survey, nor the patent, is exhibited in the record, and not a solitary witness has pretended to point out any part of the survey, except the beginning corner. The surveyor has given a figure on the connected plat, which lie describes to be the land surveyed and patented for Rice ; but the figure so given, he reports to have been laid down by the directions of the complainants, and cannot, according to any rule of evidence, be admitted competent to prove the boundary of Rice’s survey. The report is, no doubt, competent to prove any objects reported to exist on the ground ; and if the corner trees and lines of the figure represented as Rice’s boundary, had been described by the surveyor in his report, the report would have been evidence of the existence of those objects; and a correspondence between those objects and the calls in the certificate of survey, or patent of Rice, would be sufficient to identify the land patented to Rice. But as neither the certificate of survey nor patent is exhibited in the record, there is nothing to aid the report of the surveyor in this cause, and that report cannot be admitted sufficient to prove the land described as Rice’s, to have been in fact surveyed for him and included in his patent.
*77 It results, therefore, that the court was correct in dismissing the complainants’ bill; and consequently, the decree must be affirmed with costs.